# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNMARIE GENTILE, **Plaintiff** | : | No. 3:08cv2330 |
| v. | : | (Judge Munley) |
| DES PROPERTIES, INC., d/b/a CLASSIC QUALITY HOMES, INC., and all their successors and assigns; DAVID WENGERD and STEVEN WENGERD, **Defendants** | : | |

## **MEMORANDUM**

Before the court for disposition is the motion to dismiss Counts I, IV, V and VII of Plaintiff Annmarie Gentile's complaint, filed by Defendants DES Properties, Inc. d/b/a Classic Quality Homes, Inc., David Wengerd and Steven Wengerd (hereinafter collectively "defendants"). The matter has been fully briefed and is ripe for disposition.

## Background

Defendants employed plaintiff beginning in June 2007 when they purchased the company for which she worked. (Doc. 6, Amended Complaint at ¶ 11). Defendants bought the company from Raymond Bender. (Id.) Although he had sold the company, Bender continued to regularly come onto the company premises with the defendants' permission. (Id. at ¶ 13). Plaintiff informed the defendants that Bender had previously harassed her and was continuing so to do each time he visited the workplace. (Id. at ¶ 14). Regardless of this notification, the defendant continued to allow Bender and his harassing conduct onto the premises. (Id. at ¶ 15). Defendants stood by as Bender's conduct toward plaintiff and her co-worker Andrea Costenbader (hereinafter "Costenbader") and other women in the office became more aggressive. (Id.)

Plaintiff asserts that she witnessed Bender commit a sexual assault upon Costenbader. (Id. at 16 - 17). Plaintiff complained of the assault to the foreman, Gerry Gaito, who stated that he wanted "nothing to do with it." (Id. at 18). The women also contacted the Pocono Mountain Regional Police and filed criminal charges with regard to the incident with Bender. (Id. at 20). Plaintiff also filed a discrimination complaint with the Equal Employment Opportunity Commission on December 5, 2007. (Id. at ¶ 21). Plaintiff asserts that the defendants ignored complaints about the harassment and retaliated against her for complaining. (Id. at ¶ ¶ 22).

Specifically, Plaintiff states that Defendants fired Costenbader after she and Plaintiff filed criminal charges against Bender despite the fact that Costenbader had received a promotion just days earlier. (Id. at ¶ 22). Plaintiff states that Defendants told her to lie about her reasons for filing the criminal charges. (Id.) Plaintiff also states that following her complaints, Defendants "subjected her to repeated searches of her workstation for evidence to justify the termination of her employment," and that "on multiple occasions threatened her with discharge." (Id. at ¶ 24).

At roughly the same time as the Bender incident discussed above – "[o]n or about November 2009" – plaintiff informed defendants that she was pregnant and that her child was due on August 4, 2008. (Id. at ¶ 25). Some months later – "[i]n or about early Spring 2008" – plaintiff states that she and defendants reached an agreement whereby defendants would provide plaintiff with three weeks worth of paid maternity leave and that, in addition to the maternity leave, she could use her one week of paid vacation and any unused paid sick and personal days in conjunction with her maternity leave "with the understanding that she would return to work

after that time." (Id. at ¶ 27).

Subsequent to this original agreement regarding time away after plaintiff gave birth – "in or about June 2008" – David Wengerd "suggested that it would be more advantageous for [plaintiff] to take a temporary 'layoff' beginning on July 1, 2008 and returning to work on October 1, 2008." (Id. at ¶ 27). David Wengerd also told plaintiff "she would be able to collect unemployment compensation benefits during the alleged 'layoff' period and that he would continue her medical, dental, and vision insurance during that time as well." (Id.)

Plaintiff continued to work through the final day of June 2008 – the day before the temporary "layoff" was to begin – and during the final week of June 2008, David Wengerd instructed plaintiff to explain parts of her job to Steven Wengerd who he said would "temporarily do her job while she was out." (Id. at ¶ 29).

Plaintiff states that "[o]n or about July 1, 2008" she filed for unemployment compensation benefits. (Id. at ¶ 30). Nonetheless, plaintiff avers that David and Steven Wenger continued "calling her to come in to continue working twenty hours or more for approximately two or three days per week during at least the first three weeks of July 2008." (Id. at ¶ 31).

Plaintiff's paycheck for the last two weeks of June 2008 was "short and . . . she was still owed an additional week of pay for the time period.." (Id. at ¶ 32). When plaintiff spoke to Steven Wengerd and requested the pay owed, Steven told her it would be difficult to get from David Wenger. (Id. at ¶ 33). When Steven contacted plaintiff to tell her that the pay due would be ready the following Friday – "two weeks late" – Steven also informed her that David had cancelled her insurance effective at the end of

3

July, before plaintiff's due date. (Id. at ¶ 34).

It appears that plaintiff was paid for her work through the end of June 2008, but plaintiff states that she was not paid for her work during July 2008 prior to the birth of her child on July 30, 2008. (Id. at ¶¶ 35-36). She also states that she has not been compensated for the three weeks maternity leave agreed to by defendants or her accrued paid vacation, sick, and personal time. (Id. at ¶ 37).

After filing for unemployment benefits, plaintiff was informed by the unemployment compensation authorities that defendants' position was that plaintiff had quit her job voluntarily and would, therefore, be ineligible to receive benefits. (Id. at ¶ 38). Plaintiff states that when she tried to contact him, David Wengerd avoided her calls and although Steven Wengerd assured her that the authorities were mistaken, a copy of the letter from defendants to the authorities which was supposed to correct the error revealed that "Defendants had merely misrepresented the circumstances of her employment termination once again, such that she would be precluded" from receiving unemployment benefits. (Id. at ¶¶ 39-41).

When plaintiff finally reached David Wenger directly, "he told her that he no longer wanted her to come into work or return on October 1, 2008 as agreed and that he had hired two girls to replace her." (Id. at ¶ 43). Plaintiff states that defendants have continued their retaliation subsequent to the permanent termination of her employment by "refusing to correct their false representations to unemployment authorities" and, further, by "falsely communicating to unemployment authorities that she had essentially failed to return to work for them as promised." (Id. at ¶ 44).

Accordingly, plaintiff filed the instant seven-count amended complaint which raises the following causes of action: Count I - sex discrimination and harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"); Count II - retaliation; Count III - defamation; Count IV - tortious interference; Count V - unpaid wages; Count VI - wrongful discharge; and Count VII - fraud/tortious misrepresentation. Defendants responded by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, bringing the case to its present posture.

**JURISDICTION**

As this case is brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e for unlawful employment discrimination, this court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

This court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**LEGAL STANDARD**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. Granting the motion is appropriate if, accepting as true all the facts alleged in the complaint, the plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable

5

to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Third Circuit interprets Twombly to require the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaints. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35.

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (citation omitted). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." Id.

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). However, "we are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949-50 (2009) (internal quotations omitted).

To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**DISCUSSION**

Defendants seek dismissal of four of plaintiff's claims. The court will address each claim in turn.

**A. Count 1 - Sex Discrimination and Harassment**

Defendants assert that they cannot be held liable for the harassing misconduct of a non-supervisory individual, such as Bender, unless the employer is on notice of the alleged harassing acts. Defendants argue that plaintiff has not adequately alleged that they had notice of the harassing conduct. After a careful review, we disagree.

The elements of a sexual harassment/hostile work environment claim against an employer are: "(1) the employee suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability." Hutson v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009) (citing Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001); Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990)). In this context, the fifth element– *respondeat superior*– means notice to the employer, not vicarious liability. Kunin v. Sears Roebuck & Co., 175 F.3d

7

289, 293 n.5 (3d Cir. 1999).

Although the Court of Appeals for the Third Circuit has not addressed the question, lower courts in this circuit and other courts of appeal have held an employer liable for the sexual harassment of its employee by a non-employee "'where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action.'" Graves v. County of Dauphin, 98 F. Supp. 2d 613, 620 (M.D. Pa. 2000) (quoting 29 C.F.R. § 1604.11(e) (1997)). Accord Mongelli v. Red Clay Consol. Sch. Dist. Bd. of Educ., 491 F. Supp. 2d 467, 476 (D. Del. 2007) (compiling cases holding employers liable for harassment by non-employees).

Defendants argue that plaintiff failed to adequately plead notice– that they knew or should have known of the harassment and failed to take prompt remedial action. Plaintiff's amended complaint alleges that she "made Defendants aware" of Bender's history of harassment and that the harassment continued every time he visited the place of business. (Doc. 6, Amended Complaint, ¶ 14). Plaintiff further alleges that "[n]evertheless, Defendants permitted Bender to continue his harassing conduct each time he came to the facility. Indeed, Defendants stood by as Bender became even more aggressive toward [plaintiff], her co-worker Andrea Costendbader, and other women in the office." (Id. at ¶ 15).

Accepting as true plaintiff's factual allegations and viewing them in a light most favorable to her, plaintiff has stated a plausible claim to relief. Plaintiff alleges that she brought Bender's harassment to defendants' attention. This allegation is no mere recitation of an element. Plaintiff does not simply allege that defendant had notice, but rather that after

8

defendants purchased the company and before the incidents at issue here she herself made defendants aware of Bender's behavior. Exactly how plaintiff made defendants aware can be explored during discovery. We note further that plaintiff's allegations also appear to satisfy the remaining elements, and that defendant does not contest them. For these reasons the court will deny defendants' motion to dismiss plaintiff's claim of sexual discrimination and harassment.

## B.  Count IV -  Tortious Interference

Count IV of plaintiff's amended complaint asserts that the defendants purposefully and without justification interfered with plaintiff's legal right to receive unemployment compensation. (Doc. 6, Am. Compl. at ¶ ¶ 62- 63). Plaintiff seeks to recover for this "tortious interference." Defendant seeks dismissal of Count IV arguing that this claim is pre-empted by the Unemployment Compensation Law, 43 Penn. Stat. § 751 et seq.

In support of their position, the defendants cite Highhouse v. Avery Transp., 660 A.2d 1374 (Pa. Super. Ct. 1995). According to the defendants, this case recognizes a claim for alleged termination in retaliation for apply for benefits, but disapproves of a tort claim to collect benefits. We agree, that the case stands for these propositions, see id. at 1378, Highhouse, however, does not address the issue of this case. The issue we are presented with is whether the defendants can be liable for the pecuniary loss plaintiff suffered due to their interference with plaintiff's right to receive unemployment compensation. It is not a tort action to collect Worker's Compensation benefits. Defendant has cited no authority that holds that the Pennsylvania Worker's Compensation Law pre-empts a cause of action for tortious interference with receiving such benefits. In

9

fact, the Third Circuit Court of Appeals has tangentially acknowledged the existence of the cause of action in Krashna v. Oliver Realty, Inc., 895 F.2d 111, 114-15 (3d Cir. 1990).

Because the defendant has not provided a valid reason to dismiss the tortious interference cause of action, this portion of their motion to dismiss will be denied.[1]

**C. Count V - Unpaid Wages**

The fifth count of plaintiff's complaint is a claim for unpaid wages. (Doc. 6, Am. Complt. ¶ ¶ 64 - 72). Plaintiff seeks unpaid wages under various legal theories including the claim that defendants are liable for certain amounts of unpaid wages for failing to sufficiently notify her in advance of her employment termination under 43 PENN. STAT. § 291 (hereinafter "section 291"). This law provides that when an employer requires advance notice of employment termination from its employees, that employer must likewise provide advance notice of termination.[2]

---

[1] Defendants also argue that plaintiff's claim should be dismissed because it is based upon evidence that is privileged. We disagree. It is not appropriate to determine this evidentiary issue so early in the proceedings before discovery has even occurred.

[2] Specifically, the law provides:

> From and after the passage of this act, any individual, partnership or corporation, who or which requires from persons in his or its employ, under penalty of forfeiture of part of wages earned by them, a notice of intention to leave such employ shall be liable to pay to the party injured a sum equal to the amount of said forfeiture, if he or it discharges, without similar notice, a person in such

10

Defendants argue that plaintiff has stated no facts that would support the application of this statute to the instant case, and after a careful review, we agree.

In order for section 291 to apply, the plaintiff must establish that the employer required advanced notice of an employee intention to leave employment or that employee would suffer a forfeiture of part of the wages earned by that employee. Plaintiff's Amended Complaint does not allege that the employer required such advanced notice. Accordingly, a claim for unpaid wages under section 291 has not been properly pled. The portion of Count V seeking recovery of section 291 will be dismissed.

**D. Count VII - Fraud/Tortious Misrepresentation**

The final count of plaintiff's complaint, Count VII, asserts a cause of action for "Fraud/Tortious Misrepresentation." Plaintiff contends that defendants fraudulently uttered misrepresentations of material fact to that induced her to leave her full-time employment; induced unemployment authorities to deny her unemployment benefits; and otherwise damaged plaintiff. (Doc. 6, Am. Compl. ¶¶ 85 - 86). Defendants move to dismiss this count on the basis that it does not meet the pleading requirements for fraud set forth in Rule 9 of the Federal Rules of Civil Procedure (hereinafter

---

> employ, except for incapacity or misconduct, unless in case of a general suspension of labor in his or its mine, shop or factory, or a suspension of work ordered by the employes of such individual, partnership or corporation.

43 PENN. STAT. § 291.

"Rule 9").³

Rule 9 provides: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud[.] Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Third Circuit has explained the requirements of this rule as follows:

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Id. (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations). Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.

Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004).

After a careful review, we find that plaintiff has sufficiently pled her allegations of fraud. Plaintiff alleges that defendants offered her a paid maternity leave for three weeks after the birth of her child. Then in June 2008, Defendant David Wengerd represented to her that it would be more advantageous for her to be temporarily "laid off" in July 2008 with the promise that she could return to work in October 2008. (Doc. 6, Am.

---

³Defendants do not challenge the substance of the claim, that is whether plaintiff has alleged the elements of fraud, but merely the sufficiency of the factual allegations to provide the information required under Rule 9. Thus, we shall only address the Rule 9 issue.

Compl. ¶ ¶ 26 - 27). Defendant David Wengerd also "with the intent to deceive" advised plaintiff that she would receive unemployment compensation during the "layoff" period. (Id.) Based upon these representations, plaintiff agreed to and did work through the last day of June 2008. (Id. at ¶ 28). Then defendants acted to have plaintiff's unemployment payments stopped and she was ordered to pay back all the benefits she received, with interest. (Id. at ¶ 42). Defendants also failed to allow plaintiff to work as promised. (Id. at ¶ 43).

These are merely some of the allegations of the amended complaint, as set forth more fully above, that support plaintiff's claim of fraud/misrepresentation. We conclude that the allegations are sufficient to overcome the defendants' motion to dismiss.

**Conclusion**

For the reasons set forth above, the defendant's motion to dismiss is granted with respect to the portion of Count V that seeks recovery under 43 PENN. STAT. § 291, and it will be denied in all other respects. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNMARIE GENTILE, <br> **Plaintiff** | : <br> : <br> : | No. 3:08cv2330 |
| v. | : <br> : | (Judge Munley) |
| DES PROPERTIES, INC., d/b/a CLASSIC QUALITY HOMES, INC., and all their successors and assigns; DAVID WENGERD and STEVEN WENGERD, <br> **Defendants** | : <br> : <br> : <br> : <br> : <br> : | |

## ORDER

**AND NOW**, to wit, this 16th day of February 2010, the defendants' motion to dismiss (Doc. 13) is **GRANTED** with respect to the portion of plaintiff's amended complaint that seeks recovery under 43 PENN. STAT. § 291. It is **DENIED** in all other respects.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**